BURKHALTER, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 110–112. Argued September 14, 1971.—Decided October 5, 1971.*
(Also reported in 190 N. W. 2d 502.)

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error there was a brief by *Robert W. Warren,* attorney general, and *William F. Eich,* assistant attorney general; the cause was argued by *Sverre O. Tinglum,* assistant attorney general.

BEILFUSS, J.   There are six issues presented:

1. Did the defendant understand the range of punishments carried by the three violations charged?

2. Did the trial court fail to ascertain whether any promises or threats had been made in regard to the defendant's appearance?

3. Did the trial court establish that the defendant's conduct constituted the offense charged (the theft and escape charges)?

4. Did the trial court lack jurisdiction because the information charged an offense *in futuro* (theft charge)?

5. Did the trial court fail to establish defendant's understanding of the nature of his crime (escape charge)?

6. Did the trial court have jurisdiction over the escape charge since the complaint alleged a violation which was a crime not known to law?

A defendant wishing to withdraw a guilty plea has the burden of establishing that his plea was made involuntarily and without understanding. *Drake v. State* (1969), 45 Wis. 2d 226, 172 N. W. 2d 664. He must also demon-

strate that the denial of a motion to withdraw a plea of guilty works a manifest injustice. *Martinkoski v. State* (1971), 51 Wis. 2d 237, 186 N. W. 2d 302; *State v. Reppin* (1967), 35 Wis. 2d 377, 151 N. W. 2d 9.

The defendant's counsel first argues that the court "did not *fully* establish that defendant knew the range of punishment," and that under *Ernst v. State* (1969), 43 Wis. 2d 661, 170 N. W. 2d 713, he is entitled to withdraw his plea of guilty.

The record reveals that at a hearing held on January 16, 1970, the defendant testified that he had participated in court procedures in criminal matters before and that he knew of his "rights" and "procedure in court."

At the January 27, 1970, hearing before his pleas to the three charges were accepted, together with other relevant *Ernst* inquiries, the court informed and questioned the defendant as follows:

*"Court:* And in regard to the penalties, you understand as indicated before, the first charge today would carry on conviction, or guilty plea, a fine of up to $1,000 or five years' imprisonment or both; the driving without owner's consent. And the charge of escape, carries a maximum fine of $500 or one year in jail or prison, or both. You fully understand that?

*"Defendant:* Yes.

*"Court:* And in regard to the other charge, 943.20 (3), it was alleged it was in excess of $2500 so it makes the penalty not more than 15 years, a fine of not more than $10,000, or both. You understand that?

*"Defendant:* Yes.

*"Court:* And you have been represented by Mr. Randal Elmer as your attorney throughout all these proceedings, is that correct?

*"Defendant:* Yes.

*"Court:* Have you had an ample opportunity to talk with him, going over the details with him?

*"Defendant:* Yes."

The combined statutory maximum for the three crimes was twenty-one years. The judge did not tell the defend-

ant that consecutive sentences would not be imposed. The total maximum of the three indeterminate sentences imposed was three and one-half years. Three years on the theft count, three years on the operating-without-consent count to be served concurrently, and six months on the escape count to be served consecutively. In addition, the three-year sentences were concurrent with a previously imposed sentence. Neither the defendant nor his counsel state that the defendant was in fact misled or induced to enter the pleas by virtue of any false or incomplete information concerning the range of punishments. We have no hesitation in deciding that this error, if it can be considered error, was completely harmless.

The defendant contends the trial court failed to ascertain whether any threats or promises had been made in connection with his appearance.

In *Ernst v. State, supra,* this court set forth guidelines that trial courts should use before accepting pleas of guilty. One of the guidelines taken from *State ex rel. Burnett v. Burke* (1964), 22 Wis. 2d 486, 494, 126 N. W. 2d 91, provides: "3. To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty."

The troublesome phrase of the guideline is "promises or threats . . . in connection with his appearance." Ordinarily, in most if not all cases, appearances in court in response to criminal charges are, in a sense, coerced or forced. A defendant is arrested, subjected to bail requirements or confined to await trial, and faced with the realities of a criminal trial. The overriding requirement of this guideline is that the *plea of guilty* is freely and voluntarily made, and that it is not the result of threat, promise, coercion or fear of the consequences if a plea is not entered.

There may be some instances where, literally, an appearance is the result of threat, coercion or fear, such

as a threat of mob violence to the accused (such as *Burnett*), or a prolonged stay in jail awaiting trial. In those and similar instances it is not the appearance in court that is constitutionally unfair, but the threat or coercion that induce a willingness to enter a plea of guilty "to get it over with" that lacks necessary due process.

In this record there is not the slightest hint of any threats or promises that improperly or unfairly induced the pleas of guilty. The record abounds with questions by the court and answers by the defendant that lead to the conclusion that the pleas of guilty were understandingly, freely and voluntarily made.

The phrase "in connection with his appearance," as it appears in the guilty plea guidelines of *Burnett* and *Ernst,* should be deleted for the reason that it is our opinion that relevant inquiries concerning appearance or motivation to plead guilty are encompassed in that part of the guideline which requires the court to ascertain whether any promises or threats have been made in connection with a defendant's proposed plea of guilty.

The defendant next contends that the trial court did not "personally determine ' "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty," ' " as required by *Ernst, supra.* He makes this contention as to both the theft charge and the escape charge.

In the theft case the court examined defendant on January 16, 1970. The court read sec. 943.20 (1) (a), Stats., to the defendant and some questions were raised as to defendant's intention to deprive Alphorn Ford permanently of the possession of the Torino. Testimony was given at the hearing by an officer who stated that the Torino had been removed from Alphorn's parking lot, that defendant had been seen removing the dealer's plates

from the car, and that defendant was apprehended with the car 50 miles from the scene of the theft after an accident and his refusal to report the accident to the police.

Since defendant indicated some doubt as to his intention to deprive the owner permanently of possession, the hearing was adjourned. At the January 27, 1970, hearing defendant stated that he wanted to plead guilty to the theft charge. The record shows clearly that the court questioned defendant on his comprehension of the nature of his crime. Also, defense counsel indicated that he and defendant had discussed the nature of the crime.

The defendant also raises the issue that it was not proved that the Torino had a wholesale value of $2,500. (Its retail value was $3,742.20.) It appears that at the January 16, 1970, hearing the defendant's counsel asked to have the wholesale value verified. He stated that telephone hearsay would be accepted by him. That value, as defendant states, was never explicitly put into the record. However, at the January 27, 1970, hearing the court specifically asked defense counsel if he wished to have more evidence presented by the state on the theft charge. Defense counsel stated, "I don't believe so." It can be concluded that defense counsel was satisfied that the wholesale value of the car was greater than $2,500. If not, he should have pursued the matter at that point of the hearing. We believe the record amply demonstrates the defendant understood and admitted all of the elements of the crime of theft and a value in excess of $2,500.

Under sec. 946.42 (2) (a), Stats., the state must prove that a person was in custody pursuant to a legal arrest for a felony to be charged with the crime of escape. The record shows that defendant was in the custody of John Lewis, a deputy sheriff of Green county, pursuant to the legal arrest for the theft of the Torino. The defendant contends the record does not show that Lewis was any-

thing more than an investigator for Green county. However, the information introduced at the January 27, 1970, hearing shows that Lewis was a deputy sheriff. Further, the record shows that defendant was aware that he had escaped from custody. The circumstances under which the defendant escaped leave no doubt that he escaped from custody. He escaped during a recess of the court proceeding taken at his request. This is escape from custody.

Defendant next argues that the information alleged a crime *in futuro* because the date on the information read December 31, 1970, instead of December 31, 1969, and as a consequence the trial court lacked jurisdiction over the case.

The complaint set forth December 31, 1969, as the date of the act. In open court the district attorney read the information as stating December 31, 1969. No question of the date was raised by the defendant or his counsel. We have no doubt that the date of December 31, 1970, as it appeared in the written information, was a mere clerical-type error which in no way prejudiced the defendant. It is fanciful to suggest that this was an attempt to charge a crime *in futuro*.

Sec. 955.14 (3), Stats. 1967 (now sec. 971.26, Stats. 1969), completely answers this alleged error. The section is as follows:

"No indictment, information or complaint shall be invalid nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which does not tend to the prejudice of the defendant."

Defendant next claims that the trial court failed to ascertain the defendant's comprehension of the nature of the crime involved in the escape charge. The record shows that the trial court asked:

*"Court:* And the other charge, the charge of escape, what do you feel was involved in that for your plea of guilty, what is your understanding of that?

*"Defendant:* That I escaped from custody.

*"Court:* You understand you are charged with having escaped, or run, or left without permission?

*"Defendant:* Yes."

Further, the court asked defendant's attorney:

*"Court:* Mr. Elmer, is it your feeling that you have now had the opportunity to fully discuss these cases with the defendant, and you are satisfied he understands the nature of the charges?

*"Mr. Elmer:* He does, if the court please."

The defendant, in the face of the evidence on the record, has not demonstrated that he did not understand the nature of the crime nor has he shown that a manifest injustice is perpetrated on him by the trial court's refusal to allow him to withdraw his guilty plea to the charge of escape. There was no necessity for the trial court to go into detailed questioning of defendant's comprehension in view of the answers given by the defendant. *Martinkoski, supra.* The defendant also argues that since the complaint alleged a violation of sec. 946.42 (2) (a) (c), Stats., rather than sec. 946.42 (2) (a) or (2) (c), he could be confused and a manifest injustice therefor occur. Defendant's conduct clearly falls within the ambit of both paragraphs (a) and (c) of sec. 946.42 (2). From the record it cannot be said that defendant was confused. In fact, he testified that he understood the nature of the charge against him. There was no error by the trial court in this regard.

Defendant's last argument is that since the complaint alleged a violation of sec. 946.42 (2) (a) and (c), Stats., the magistrate lacked jurisdiction to bind over defendant to trial and, as a consequence, the trial court also lacked jurisdiction.

The defect in the complaint, if it is such, means that the trial court would have lacked jurisdiction over the person but still would have had jurisdiction over the subject matter. It is frivolous to suggest that this alleged defect was more than a clerical error. As noted, paragraphs (a) and (c) both cover the instant situation.

The defendant cites *State v. Lampe* (1965), 26 Wis. 2d 646, 133 N. W. 2d 349, for the proposition that when a complaint alleges a crime not known to law there can be no waiver of the jurisdictional defect by a plea of guilty. Insofar as defendant has read the case he is correct, but this court in *Lampe* also stated, at page 648:

"The defendant's argument goes beyond a technical insufficiency of an information charging the crime and raises the question of whether the information charges any offense. . . ."

In this case the defect is technical. Consequently, defendant has waived his right to challenge the sufficiency of the complaint. *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667.

We have carefully reviewed the entire record to find any support for the defendant's alleged errors and find none. What our review did reveal was that the trial court in a competent and fair manner fully informed and extended to the defendant all of his rights and satisfied itself that the pleas of guilty were understandingly and voluntarily made, without threat or promise. We conclude, as the trial court did in an extensive, comprehensive and helpful memorandum opinion in connection with the postconviction motions, that the defendant has not shown any manifest injustice so as to warrant a withdrawal of his pleas of guilty.

*By the Court.*—Order affirmed.