PER CURIAM.
¶ 1 Paul Adamski, pro se, appeals an order denying his postconviction motions seeking a new trial.[1] In numerous circuit court filings, Adamski essentially made four arguments in support of his requests for postconviction relief: (1) the presiding judge was biased against Adamski because the judge had a financial interest in the outcome of the case; (2) the judge had an obligation to disclose to Adamski his outside income and its sources, and he failed to do so; (3) the judge failed to recuse himself for bias during the postconviction proceedings; and (4) the court erred by denying Adamski an evidentiary hearing on his postconviction motions. We reject Adamski's arguments and affirm.
BACKGROUND
¶ 2 In 2008, Adamski was charged with one count each of first-degree sexual assault of a child, child enticement, and incest, and three counts of third-degree sexual assault of a child. Judge Mark McGinnis presided over Adamski's case.
¶ 3 Following a jury trial, Adamski was convicted of repeated sexual assault of a child, child enticement and incest; and two counts of third-degree sexual assault of a child. The circuit court sentenced Adamski to forty-five years' initial confinement and twenty-five years' extended supervision. Adamski's counsel filed a no-merit report with this court. We summarily affirmed Adamski's conviction on direct appeal, finding no arguable merit to any issue that might be raised on appeal. State v. Adamski , No. 2010AP2190, unpublished slip op. (WI App Dec. 12, 2012).
¶ 4 Adamski subsequently filed a postconviction motion in which he argued his conviction should be reversed and he was entitled to a new trial because Judge McGinnis was disqualified from presiding in his criminal case due to a financial interest in the matter. Adamski then filed a motion asking Judge McGinnis to recuse himself from handling his postconviction motions, and Adamski began filing briefs, supplements, and other documents he contended supported his request. Specifically, he stated Judge McGinnis received money for teaching the Appleton police and received money from the Wisconsin Department of Corrections (DOC) under a lease of a commercial building that Judge McGinnis owned. Over the course of the next three years, Adamski filed a series of letters, motions, briefs, supplements, affidavits and exhibits in support of his bias claim and recusal request.
¶ 5 Adamski's motions were predicated on the following facts. Judge McGinnis was elected to the Outagamie County Circuit Court in 2005. He had been involved in teaching law-related matters since 1996. He taught judges as a member of the faculties of the Wisconsin Judicial College and the National Judicial College, and he has taught at colleges and law schools. He also participated in a law enforcement educational program called Legal Update. The Legal Update classes Judge McGinnis taught were "about developments in cases and statutes ... an update of the law for [Appleton Police Department (APD) employees]." From 2007 through 2011, while a circuit court judge, Judge McGinnis was paid a total of $18,450 by the APD to conduct forty-one half-day Legal Update sessions for law enforcement. Between 2009 and 2014, Judge McGinnis was paid $150,000 to teach at the Fox Valley Technical College.
¶ 6 Prior to becoming a judge, in 2004, Judge McGinnis purchased a commercial building. The building was leased to the DOC in late 2007 or early 2008. The lease provided that the DOC would pay Judge McGinnis $2.7 million over a period of fifteen years.
¶ 7 In an August 2016 oral decision, the circuit court denied all of Adamski's postconviction motions without a hearing. Adamski now appeals.
DISCUSSION
¶ 8 A judge "shall disqualify himself or herself from any civil or criminal action or proceeding" when he or she "has a significant financial or personal interest in the outcome of the matter." WIS. STAT. § 757.19(2)(f) (2015-16).[2] The interest must be direct, real and certain, not indirect, incidental or remote. Goodman v. Wisconsin Elec. Power Co. , 248 Wis. 52, 58, 20 N.W.2d 553 (1945). There must be such a substantial interest in the result as to make it likely that the judge has a real bias in the matter. Id. Failure of a judge to recuse himself when he has a significant financial interest in the case is a structural error requiring automatic reversal. State v. Carprue , 2004 WI 111, ¶ 59, 274 Wis. 2d 656, 683 N.W.2d 31.
¶ 9 We presume a judge acted fairly, impartially, and without prejudice. State v. Herrmann , 2015 WI 84, ¶ 3, 364 Wis. 2d 336, 867 N.W.2d 772. A party may rebut that presumption by showing: (1) that there are objective facts demonstrating the judge in fact treated a party unfairly; or (2) that the appearance of bias reveals a great risk of actual bias. Id. , ¶¶ 27, 46. "[T]he appearance of bias offends constitutional due process principles whenever a reasonable person-taking into consideration human psychological tendencies and weaknesses-concludes that the average judge could not be trusted to 'hold the balance nice, clear and true' under all the circumstances." State v. Gudgeon , 2006 WI App 143, ¶ 24, 295 Wis. 2d 189, 720 N.W.2d 114.
¶ 10 On a claim of judicial bias, appellate courts must evaluate the existence of bias in both a subjective and an objective light. See State v. McBride , 18 Wis. 2d 409, 415, 523 N.W.2d 106 (Ct. App. 1994). The subjective component is based on the judge's own determination of whether he or she will be able to act impartially. Id. A judge satisfies the subjective recusal test by determining that he or she is impartial. Herrmann , 364 Wis. 2d 336, ¶ 144 n.12 (Ziegler, J., concurring). Objective bias exists when objective facts demonstrate that the judge was actually biased. McBride , 187 Wis. 2d at 416. This means "the defendant must show that the 'trial judge in fact treated him [or her] unfairly.' " Id. (quoting State v. Rochelt , 165 Wis. 2d 373, 381, 477 N.W.2d 659 (Ct. App. 1991) ). In addition, "the appearance of bias violates due process when there is 'a great risk of actual bias.' " Herrmann , 364 Wis. 2d 336, ¶ 40. There is an appearance of bias when a reasonable person could conclude that the average judge with ordinary human tendencies and weaknesses could not be trusted to remain neutral under the circumstances. Id. , ¶ 32; State v. Goodson , 2009 WI App 107, ¶ 9, 320 Wis. 2d 166, 173, 771 N.W.2d 385 ; Gudgeon , 295 Wis. 2d 189, ¶ 24.
¶ 11 Whether a judge was objectively impartial is a question of law that is reviewed independently on appeal. See Herrmann , 364 Wis. 2d 336, ¶ 23. Whether a judge was a neutral and detached magistrate is a question of constitutional fact which we review de novo and without deference to the circuit court's ruling. State v. Neuaone , 2005 WI App 124, ¶ 16, 284 Wis. 2d 473, 700 N.W.2d 298.
A. Judicial bias-pretrial and trial proceedings
¶ 12 Adamski cites Caperton v. A.T. Massey Coal Co. , 556 U.S. 868 (2009), to argue that Judge McGinnis was required to recuse himself from presiding over this case because he took payments from party litigants (the DOC and the APD-parties, he asserts, that were interested in the outcome of this case) during the time he presided over the matter. Adamski argues these payments, together with ongoing payments from teaching other law enforcement agencies, provided evidence of a significant financial interest in the case and caused undue influence over Judge McGinnis's decision-making. In other words, Adamski contends there was evidence of actual bias.
¶ 13 We conclude Adamski fails to rebut the presumption that Judge McGinnis acted fairly, impartially, and without prejudice. Adamski fails to show that Judge McGinnis had any actual or apparent financial interest in the outcome of Adamski's case.
¶ 14 As an initial matter, neither the APD nor the DOC was a party to this case.[3] Unlike the judge at issue in Caperton , Judge McGinnis did not receive any money from any party to the litigation over which he presided. A party is one by or against whom a lawsuit is brought. State v. Barfell , 2010 WI App 61, ¶ 8 n.4, 324 Wis. 2d 374, 782 N.W.2d 437. Under this definition, police officers and police departments-who do not bring criminal lawsuits-are not parties to such actions. Czajkowski v. City of Chicago , 810 F. Supp. 1428, 1431, 1433 (N.D. Ill. 1993) ; State v. Benedict , 148 A.3d 1044, 1051 (Conn. 2016) ; Gentile v. Bauder , 718 So.2d 781, 783 (Fla. 1998). Neither is the Department of Corrections.
¶ 15 Adamski cites Brown v. Vance , 637 F.2d 272, 282 (5th Cir. 1981), to support his argument that the DOC and the APD were "parties in interest in the outcome" of his trial. However, Brown does not hold that police officers, police departments, or departments of corrections are parties in criminal cases. Id. Rather, the Brown court merely stated that "[t]estimony of law enforcement officers and experts in police science supports the plaintiffs' assertion that law enforcement officers have an interest in the outcome of criminal cases in which they participate. Arresting officers naturally seek convictions." Id. (emphasis added). But many other people have an interest in the outcome of criminal cases, including victims, friends and family of the victims, witnesses, and support groups; nevertheless, those interests do not make such individuals parties to an action as recognized in the law.
¶ 16 We also conclude there is no appearance of bias based upon Judge McGinnis's instruction of law enforcement. Judge McGinnis was paid to teach police officers regarding updates in the law. It is not likely that the average judge, with ordinary human tendencies and weaknesses, would feel influenced to make decisions the police department would want because of an agreement to educate police officers on recent court decisions. There is nothing in the record objectively suggesting that Judge McGinnis's position as a teacher might have depended on his performance as a judge or affected his impartiality in this case. Therefore, we cannot determine on these facts that Judge McGinnis had any direct, real or certain interest in the outcome of Adamski's case. To determine otherwise would be tantamount to disqualifying most judges from presiding over criminal cases if the judge ever taught law enforcement.
¶ 17 Further, the record is devoid of any evidence indicating the lease of Judge McGinnis's building to the DOC was anything other than an ordinary, arms-length property transaction. There is also no evidence in the record concerning any contact between Judge McGinnis and the DOC concerning this case, or that the DOC had any interest in this case. Further, Adamski has not shown the average judge would be unable to set aside his or her general contractual interests with a state agency while presiding over the case of a particular offender. This would appear to be particularly so where, as here, that contract is for a defined term and is not dependent upon, or concerning, any of the court's decisions.
¶ 18 Adamski appears to argue that the APD and the DOC have an institutional interest in cases in Judge McGinnis's court, such that it could appear the judge would want to ensure that criminal defendants were convicted so that payments to him would continue. Such an argument does not hold water. Judge McGinnis taught law enforcement for years prior to becoming a judge, and he entered into the DOC lease prior to Adamski being charged. He continues to teach to other audiences, including other judges. There is nothing in the record to indicate that Judge McGinnis was affected in his decision-making by any of his financial arrangements, or that an average judge with ordinary human tendencies and weaknesses would have been so affected.
¶ 19 In sum, neither the payments to Judge McGinnis for his work as a teacher nor the rental proceeds from the DOC were payments made by a party in this case. Adamski has not shown any sort of quid pro quo for the money Judge McGinnis received that would demonstrate Judge McGinnis had a financial interest in Adamski's case-much less a "significant" financial interest under WIS. STAT. § 757.19(2)(f) -or that an average judge would have been affected in his or her decision-making by these financial arrangements. Therefore, we conclude Judge McGinnis's income received from teaching the APD and his receipt of DOC rental proceeds do not provide a basis to conclude McGinnis was objectively biased. He properly denied Adamski's motions for postconviction relief based upon claimed judicial bias.
¶ 20 Adamski next contends Judge McGinnis was obligated to disclose his outside income to Adamski, and his failure to do so provides a basis for postconviction relief. Judge McGinnis concluded that Adamski provided no evidence that Judge McGinnis treated him unfairly. In response, Adamski alleges the "unfair[ness]" was Judge McGinnis's failure to disclose his income and its sources to Adamski. A judge must fully and completely disclose on the record factors disqualifying him from presiding in a case. WIS. STAT § 757.19(3) ; City of Edgerton v. General Cas. Co. , 190 Wis. 2d 510, 517, 527 N.W.2d 305 (1995). Such factors include a significant financial interest in the matter when the judge has such an interest. Sec. 757.19(2)(f). In addition, a judge who is aware of facts that may be relevant to the issue of his or her disqualification must disclose those facts to the parties for the purpose of the parties' waiver or nonwaiver of the judge's disqualification pursuant to § 757.19(3). City of Edgerton , 190 Wis. 2d at 517 ; § 757.19(3).
¶ 21 As discussed above, Judge McGinnis did not have any financial interest in Adamski's criminal case by virtue of his agreement to teach Legal Update classes to police or his renting property to the DOC. As such, Judge McGinnis's nondisclosure of his outside income to Adamski does not demonstrate unfairness or actual bias toward Adamski. Adamski does not allege Judge McGinnis committed any misconduct in the criminal proceeding against Adamski. Further, Adamski's case was tried to a jury, and his convictions were summarily affirmed by this court in a decision that found no arguable merit on any issue that might be raised on appeal. Here, Judge McGinnis's income and its sources did not provide a basis for postconviction relief to Adamski.
¶ 22 Adamski also asserts that a judge's failure to reveal his or her outside income is a potential reason for disqualification because it implicates a defendant's right to counsel. This argument is undeveloped because Adamski fails to adequately explain how depriving a party or an attorney of such information effectively deprives a defendant of counsel. We ordinarily do not address undeveloped arguments, and we decline to do so here. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶ 23 Adamski next argues Judge McGinnis was disqualified from presiding over his criminal proceeding because Judge McGinnis had a conflict of interest. For reasons unexplained, he claims the district attorney could decide to prosecute Judge McGinnis for various crimes, including racketeering. This argument is also undeveloped. Adamski simply lists a series of statutes without identifying what conduct those statutes proscribe, and, more importantly, what conduct demonstrated a possible violation of any of those statutes. Again, we do not address undeveloped arguments. See id.
B. Recusal-postconviction proceedings
¶ 24 Adamski also contends Judge McGinnis erroneously exercised his discretion when he concluded he was not required to recuse himself during the postconviction proceedings. The rules regarding disqualification of a judge in postconviction proceedings are the same as those regarding disqualification at a trial. See State v. Pinno , 2014 WI 74, ¶¶ 92-93, 356 Wis. 2d 106, 850 N.W.2d 207. A judge is not precluded from presiding in the postconviction proceedings just because he or she presided at the trial. Id. , ¶ 92. Adamski seems to argue that Judge McGinnis's presiding over the postconviction proceeding-in which Adamski challenged McGinnis's impartiality-automatically constituted "unfair treatment." As best as we are able to discern, Adamski's complaints are that the postconviction proceedings went on for over three years without an evidentiary hearing or appointment of counsel, and that Judge McGinnis mishandled Adamski's public records request.
¶ 25 Adamski fails to make a coherent argument as to Judge McGinnis's subjective bias during the postconviction proceedings. Nonetheless, we can find no fault with the circuit court's analysis. Judge McGinnis properly reviewed Adamski's arguments under WIS. STAT. § 757.19(2)(f). He considered whether any of his decisions in the case could be viewed as unfair or demonstrating bias. Adamski has not demonstrated any record evidence tending to suggest that Judge McGinnis erred in concluding he was not subjectively biased under § 757.19(2)(f), or under the common law test for subjective bias, which only requires that judge determine that he or she is impartial. See McBride , 187 Wis. 2d at 415.
¶ 26 As to the alleged protracted nature of the postconviction proceedings, Adamski contends there was a sixty-day deadline for a determination of his motion. Adamski cites WIS. STAT. RULE 809.30(2)(i), but that rule does not apply to his WIS. STAT. § 974.06 postconviction motions. It only applies to motions under RULE 809.30 or WIS. STAT. § 974.02. See WIS. STAT. RULE 809.30(2)(i) ; see also §§ 974.02(1) and 974.06(c). Regardless, the mere fact the postconviction proceedings were protracted does not mean they were unfair. More importantly, Adamski fails to address the real reason for the delays, which is that he filed a multitude of duplicative motions, supplements, demands, complaints, letters and objections. Adamski cannot complain that the delayed postconviction proceedings were unfair when he was the cause of the delay.
¶ 27 Similarly, Adamski's contention that delays in the postconviction proceedings related to a delay in Judge McGinnis responding to his public records request is without merit. Adamski sought records from Judge McGinnis in an attempt to substantiate the claims in his postconviction motions. He now contends the proceedings were wrongfully postponed due to a delay in the response to the public records request. As an incarcerated person, Adamski was not entitled to obtain the records himself, so he sought them through a "straw requester."[4] Judge McGinnis followed a proper process for responding to the request by doing so through the Director of State Courts office. Adamski does not claim Judge McGinnis provided an untimely response, and the records custodian properly required prepayment from Adamski's straw requester for copies of the requested records under WIS. STAT. § 19.35(3). Adamski's requester was unwilling to pay the legally required fee, thereby causing the delay. Judge McGinnis did nothing to unfairly cause any delay related to the public records request.
¶ 28 On the issue of delay in the proceedings, we also note that Adamski wrote a letter to Judge McGinnis that purported to be a "settlement offer."[5] The letter evinces Adamski's desire for protracted litigation related to Judge McGinnis's teaching and business dealings, and it belies his claim that Judge McGinnis unfairly delayed the postconviction proceedings:
Should we not come to a reasonable settlement, I will depose every officer you trained, city officials, Mr. Troy, and yourself. I'll dig into documents and ask probing questions for as long as it takes to win. Further, I'll be looking for more issues that I can expose.
I assume that your side of the table doesn't want me digging deeper. I expect there are persons who are as yet unexposed to liability that would prefer I not discover some of their questionable actions. All parties should know that I am an excellent auditor and seasoned at asking probing questions. I am imaginative, resourceful, intelligent, and driven. If there is more evidence to be found, I will find it.
Adamski now contends it was inappropriate for Judge McGinnis to consider the letter in his decision.[6] Given Adamski's claims that Judge McGinnis was subjectively biased and unfairly caused delay in resolving the postconviction proceedings, it was appropriate for Judge McGinnis to cite this evidence in the record to support the court's decision. The letter clearly evidences that Adamski had no interest in quickly resolving the postconviction matter and that the delay in the proceedings was not occasioned by any bias or unfairness on Judge McGinnis's part. We conclude Judge McGinnis did not cause the protracted litigation, and the delay provided no basis for postconviction relief to Adamski.
¶ 29 As part of his unfairness argument, Adamski also faults Judge McGinnis for relying on the federal district court's decision in Adamski v. McGinnis , No. 13-CV-962-JPS, slip op. (E.D. Wis. Mar. 30, 2015). He claims, contrary to Judge McGinnis's decision, the federal case was not dismissed as frivolous, but on jurisdictional grounds. Adamski is wrong. The district court ordered the action "DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim and as frivolous ." Adamski , No. 13-CV-962-JPS, at 5 (emphasis added). The federal court reasoned that Adamski failed to show how he might have been harmed by Judge McGinnis's failure to report money he received for teaching Appleton police. Id. at 3. In addition, the court stated "it is a near certainty that the conduct at issue was neither criminal nor did it color any judge's decision making." Id. at 4 n.1. We conclude Judge McGinnis properly relied on the federal decision in reaching the same conclusions.
C. Evidentiary hearing
¶ 30 Adamski also argues the circuit court erred in denying his request for an evidentiary hearing. An evidentiary hearing must be held on a postconviction motion when the defendant's motion alleges sufficient facts, which, if true, would entitle the defendant to relief. State v. Allen , 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. Conclusory allegations are not enough. Id. , ¶ 15. Whether the defendant's motion alleges sufficient facts to warrant a hearing is a question of law that appellate courts review de novo. See id. , ¶ 9.
¶ 31 We conclude an evidentiary hearing was not required in this case. Adamski failed to show that Judge McGinnis had any financial interest in the outcome of this case, that Judge McGinnis was required to disclose his outside income to the parties, that Judge McGinnis unreasonably delayed the proceedings, or that Judge McGinnis was disqualified from presiding in the postconviction proceedings due to any bias. Adamski was therefore not entitled to an evidentiary hearing because his motion did not allege sufficient facts, which, if true, would entitle him to relief.[7] See id.
D. Forfeiture of arguments on appeal
¶ 32 In his reply brief, Adamski objects to the State's response brief, and he claims we must disregard the State's arguments. Adamski contends the State cannot raise new arguments on appeal and the State conceded all of Adamski's claims before the circuit court.
¶ 33 We disagree for two reasons. First, the forfeiture rule does not apply to a respondent on appeal. See State v. Milashoski , 159 Wis. 2d 99, 108-09, 464 N.W.2d 21 (Ct. App. 1990). Second, we may affirm a circuit court's decision on other grounds. Id. at 108. Therefore, the State is not bound only to the arguments it made before the circuit court, and we may consider all arguments made in response to Adamski's claims on appeal.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The order denied all of Adamski's then-outstanding motions, which included his motion for postconviction relief.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted. Wisconsin Stat. § 757.19 has not been amended since 1985. We therefore cite to the current 2015-16 version throughout this opinion.

The APD and the DOC were also not "litigants" in this matter, although we understand the terms "litigants" and "parties" to be synonymous in the context of Adamski's argument.

Adamski states: "This scheme required Mr. Adamski to obtain the documents through Mr. Kubose's public records request, which, due to Wisconsin law, Mr. Adamski could not submit on his own." Adamski was barred from requesting the records pursuant to Wis. Stat . § 19.32(3).

This letter purports to relate to a federal civil case Adamski filed against Judge McGinnis, among other defendants, in federal court, see Adamski v. McGinnis , No. 13-CV-962-JPS, slip op. (E.D. Wis. Mar. 30, 2015). Adamski filed at least two lawsuits against Judge McGinnis, both of which were dismissed. See id. at 4 (referring to Adamski v. Gehring , No. 14-CV-500, slip op. at 9 (E.D. Wis. June 25, 2014) ).

Judge McGinnis read Adamski's letter on the record at the postconviction hearing at issue in this appeal. Prior to reading the letter, Judge McGinnis stated: "I would be remiss if I didn't mention and read into the record Mr. Adamski's letter to me ... I think any reviewing courts or any other reviewing authority, it's especially important to take into context this letter especially in light of the federal lawsuit that [Adamski] had filed or was filing at the time."

Adamski also asserts that he was entitled to counsel and to discovery in the postconviction proceedings, but he does not develop those claims. Again, we will not consider Adamski's undeveloped arguments. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).